The next case today is United States v. Michael E. Algiere, appeal number 191890. Mr. Bourget, please proceed. Okay. Thank you, your honor, and may it please the court, my name is Ronald Bourget. I'm an attorney from Augusta, Maine. I represented Mr. Algiere in this matter. The pertinent matter for you today is there was a pharmacy robbery at the Augusta, Maine pharmacy back in October 31st, 2007. The defendant was charged by indictment more than 10 years after that offense. The government therefore must rely on a DNA tolling statute, 18 U.S.C. 3297, to extend the statute of limitations of more than five years, which is generally on most cases. We're making a facial objection on its face that has not been made in the first circuit, but in all candor has been made in three other circuits and also, of course, the legislation itself. So Congress has, you know, reviewed this matter. But we felt it very important on the facial objection because we believe that there's a characteristic here that is vague. That probably and almost, you know, definitely was not determined in any of the other cases or by the government. And that is the statute deals with implication and when someone is implicated by DNA. And that's how that statute works. It works if after the statute, the regular statute of limitations, someone is implicated by DNA, for instance, through the CODIS investigation materials, that that can be enough and that that is of appropriate and reasonable enough language to allow that to go on. We think it's a very slippery slope. We think it's a mistake. Could you tell us why the appeal waiver isn't binding? Because you don't. It says you have to confront that head on and you don't. And that is on both counts, Your Honor. You're correct. And so I have to, in all candor, direct you to two or three things, if I may, on the waiver issue. First of all, we look at the plea. Well, we'll look at two things, if I may. The plea colloquy and I'll also look at the plea agreement. And in both of those cases, it falls short in this case. And so this was brought up by Apelli's brief. And I must ask that you consider review of the plea colloquy and the plea agreement in this matter. And when you do and I believe on the class, which is not in my brief, but I believe that based on that type of an assessment, that it is clear that there are things wanting and I'll direct you to the plea agreement, if I may. Because the Apelli's brief says that the plea agreement is clear in its terminology and fulsome in its scope. And so and it's nice to be in front of this court and have everything be clear in terminology and fulsome in scope, but it isn't. Counselor, the plea agreement says the defendant waives the right to appeal the following. Defendant's guilty plea and any aspect, any aspect of defendant's conviction in the above captioned case. Correct, and that's section four and that's happily pointed out by your honor. But directly to that, I must direct you to the consequences of the plea. And in fact, page four of that very same document. And in it, we're talking about if a defendant breaches, if a defendant breaches, then under B, the defendant waives any and all defenses based on the statute of limitations with respect to any such prosecution. That is not time barred on the date that this agreement is signed by the parties. And that is confusing to this particular defendant, Michael Algier, who got walloped on his sentence, but also wants to bring this appeal. And so that appeal waiver that is so one would look at as clear and fulsome in its scope. Oh, my God. Look at Section B here. It is completely not clear and not fulsome either for the criminal defendant. And the plea colloquy does not circumvent that either. So therefore, you're five minutes remaining. You are right on your suggestion that there is some language. OK, fine. I'm not a big professor of the I'm not one who really likes these plea agreements. But and that you are right that it does say that in Section four with regard to plea waiver. And quite frankly, in this case, we were able to get over the plea waiver because this person got hurt so badly with a sentence because his unfound substance abuse, which he's been trying to grapple with, worked against him through the time period when he finally got sentenced. But that Section B, that Section B is bad workmanship on the part of the author who is a U.S. government, who's a U.S. attorney, who put it in there. And it does confuse the defendant sufficiently, significantly, even more significantly as to whether the plea agreement is good. Fine. That's not in my brief. But I believe it addresses your point, your honor, with regard to waiver. Doesn't address our case law that says you waive it if you don't bring it up in your opening brief. It's in it's in the unless you show a teeter miscarriage of justice. And you didn't you didn't you didn't file a reply brief, did you? There's no reply brief. The teeter is not in our is not in our brief. But you have before you in our brief, the plea agreement. And you clearly have the U.S. government's position that we have clear and wholesome terminology and wholesome in scope. And it's not there. And and the trial judge says on the issue of your conviction, you understand. Paraphrasing. You understand that I'm the last judge you're going to see on this. Why isn't that the language that seems pretty clear to me? I direct your attention to page 84. Well, of document 63, which is the is the plea colloquy where he says outside the directive of the plea agreement, you would have virtually no right of appeal. Do you understand? And so what he is and the defendant says, yes, right. Correct. But it's outside the directive of the plea agreement. And if that plea agreement is confusing to the defendant under Section 5B, which it is, then he would say correct. And the other thing is implicitly, why would they put it in there? Why would it even be in there that if someone if a defendant doesn't have a consequence and doesn't violate his plea agreement? Oh, we're going to take your statute of limitation appeal rights way. That Section B of 5B, that's what that says. And we ask that you consider it. Can you just spend a minute on the merits of the vagueness claim? Do I understand it? I want I want to be careful, but the way that idea comes up is when I'm with my wife shopping for handbags. So it's it's pretty goes a while, but they have a layaway plan. And in fact, the statute is a layaway plan. It's a layaway plan because you go from the statute of limitations and we're going to erode the statute of limitations by having someone have a low layaway. Well, it works for CODIS. Fine. We think that might be reliable. And if we were the manager of a store, then we would have the layaway plan. Hey, you bring it to the to the counter and that's reasonable and appropriate for not to have money. And then the next day you can come and buy it. And I'm sure all these three circuits have agreed with that. And I'm sure the government has agreed that when the Congress did, they agreed on that. But they're missing the point, because when I shop with my wife for handbags, the problem comes when there is a lady that takes the layaway handbag and puts it in a different part of the store and then goes to other places and comes back and puts it on layaway. Well, there I don't want to argue whether it's malfeasance or nonfeasance or anything, but there's a time period that goes through that we don't have a control on and the defense won't have a control on or nor anyone else. What that means is that any time we can go to the layaway plan, any time we can go to CODIS, but we're not going to because the statute does not say it has to be CODIS at a certain time. It has to be in the in the place at a certain time, a certain way. How do we extract the registry, if you will? It doesn't say it in there. So it is just so so that malfeasance or nonfeasance makes it so the manager of the layaway plan. Second, he records it at the bench. Oh, that's reasonable and good enough. I don't get to see all these people going which way to hide their handbag to do the layaway plan. So this is really a layaway plan for the tooling of a statute. And we can all say it works well, but we're missing a big malfeasance or nonfeasance that isn't covered in the statute. It's not covered by the other circuits. And the first circuit hasn't hasn't really. You're the ones that must look at this carefully, or I ask that you do in all candor. Thank you. Thank you. Thank you. Thank you. Attorney Block, attorney for jet. If you could mute your audio and video and attorney block if you could come on. Yes, may please the court. My name is Benjamin block and I represent the United States. Good morning. I'm sorry. Can you hear me? Thank you. The primary issue from the government's perspective is this question of waiver. And we would argue that the waiver as set forth in the plea agreement was clear in its terminology and fulsome in its scope, as we said in our brief, to begin by addressing the question raised by Mr. Borgia with respect to section five  That is a standard portion of the plea agreement, which deals with circumstances in which the government has reached an agreement with the defendant, and he subsequently breaches it. And in the interim, charges that the government may not have brought may have expired under the statute of limitations. It does not relate to this case as in an as applied circumstance, because here the defendant waived his right to appeal his guilty plea and any other aspect of his conviction. This court has previously reviewed that language in Oliver, in Torres Oliveras and found that that language is clear. And certainly there is case law cited in our brief that when you use terminology such as any other, it is broad. It is intended to be broad. So not only has he waived it under the plea agreement, he waived it by not addressing Teeter or Cetirion in his opening brief. He's waived any claim that this appeal waiver constituted a miscarriage of justice. And I would also note that his challenge to the statute of limitations provision 3297 below was an as applied challenge. So to hear this morning that he's raising a facial challenge to the statute, I think puts us in a situation of plain error. The Second Circuit has also considered whether or not language such as contained in this plea agreement is sufficient to cover post guilty plea challenges to the constitutionality of a statute and found that it does. Certainly it falls within the exceptions listed by the Supreme Court in class as a explicit waiver that would preclude the defendant from bringing this claim to the court. So for those reasons, we would ask that the court decide this question on the basis of waiver and not reach the merits. Was there anything in the record below that suggests when the hit actually occurred, the date? And I'm trying to figure out if it makes a difference. If it doesn't implicate the statute of limitations anyway. Well, it implicates the statute of limitations under 3282. There is in the prosecution version an agreement, and Mr. Algear admitted to this, that the CODIS hit occurred in about February 2017. The indictment occurred a little over a year later. So we are well within the statute of limitations under 3297, which provides an additional, in this case, five years for the government to build its case. So in other words, either date we use, you still don't have a statute of limitations problem. Either the hit date or the date it got reported to the government. Correct. Correct. It was reported, I believe, on February 16th of 2017 and in or about February 2017 was agreed to by the defendant. So using either of those dates, there's no question that it was as applied. Correct. Does the government have a view as to which date is the right date for implicate? I think that the correct date would be the date that the CODIS hit actually occurs. That is the date on which the defendant is implicated in the offense. So I think, theoretically, if the CODIS hit were returned and the crime lab sat on it for, you know, five years before telling the police and allowing them to follow up on it, I think there the defendant would have a valid argument that 3297. The thing that's just odd about the way this statute of limitation works, and I don't, in addition to the waiver issue, I'm not even sure this is a vagueness point, although it seems implicated a little bit in the vagueness point, because on your account of it, the defendant will really never have notice of the actual starting of the new clock. Correct. Until he's formally, so for example, in this case, the CODIS hit was confirmed by a subsequent oral swap that was taken from the defendant. Right, but I think the triggering event for the clock starting is something he can't possibly know. Not until the government takes some action. No, no, the triggering event, by your own account, is something he can't possibly know, which is the hit. He's never told of the hit the moment it happened. Right, he wouldn't know at the moment it occurs. That's when the clock starts. On your account, that's when he's implicated, so that's when the clock starts. Correct. I don't know if this is a problem, but it's just strange to have a statute of limitations that begins to toll at a moment that the defendant could never be aware of. It is unusual, although I think that that perhaps goes to the question of whether or not statutes of limitations are susceptible to a vagueness challenge of the sort brought by the defendant. Even if it was crystal clear what implicate meant, one of the reasons we're concerned about vagueness is because you don't have notice of something. But here, the way this statute operates, even if it was crystal clear what implicate meant, you still wouldn't have notice. Because the event that constitutes the implication, and therefore starts the clock, is an event you, the defendant, could never know about. Normally, it's your own conduct in committing the offense that starts the clock, so we're not so worried about it. This is something that the defendant has no control over. Whatever happens in some lab, somebody... Do you see what I'm saying? I do, and I think that... Maybe there's some reason not to be concerned by that. And maybe it has nothing to do with this case, but it's just an odd feature that this statute has written. Well, I would say that normally vagueness doctrine is intended to give individuals notice as to what conduct they can and cannot engage in under the criminal law. Vagueness doctrine doesn't typically apply to government conduct in conducting an investigation. And so, I think the constitutional concerns about notice are of a different nature when the notice has to do with a defendant's ability to control his own actions, as opposed to a defendant's knowledge of what investigative steps the government can take to prosecute his crime and when. So, I do think that the constitutional dimension of the concern is different when you're talking about statute of limitations than if you were talking about a substantive criminal law. That's just to say that you don't have to have any statute of limitations for any offense. Theoretically, you don't. There must be some due process constraint on that, because so much time could pass, you wouldn't be able to mount a reasonable defense. Yes, and certainly one could theorize statutes of limitations that would be both vague and invite arbitrary enforcement. There could be a statute of limitations that said, no, the statute of limitations is told with respect to any criminal offense that is offensive to the president, and the president can, in his discretion... How about it was just whenever it's told whenever we think there's a good case against you? Right. Arguably, there's a certain degree to which this is similar to that, right? Which is you have a five-year limit on your conduct, but if any time thereafter the government thinks it's got a good case against you, there's another five years. And that can happen at any time after the five years runs, and we'll never tell you when it starts. Right, and the fact that we could conjure up statutes of limitations that would present these problems is why we haven't forcefully pressed the court to find that statutes of limitations are exempt from vagueness doctrine. In this particular instance, with this particular statute, those concerns aren't present because a DNA match is susceptible to a single day that starts the clock again. And it's not subject to arbitrary enforcement, or certainly the defendant has made no case that arbitrary or discriminatory enforcement was involved in the routine search of the CODIS database that occurred here. So, for those reasons, despite theoretical concerns about statutes of limitations in general, we don't see any merit to the as-applied argument or even any merit to a facial challenge to this particular statute. And I would say simply with respect to, unless the court has additional questions about the statute of limitations issue, on the question of the unreasonable sentence claim that was raised, this is a classic Clogston argument that the district court failed to weigh the sentencing factors and the evidence of sentencing. In a manner that the defendant would have preferred, and that's simply not the standard. This was a reasonable sentence. The court ably discussed all the 3553A factors. It even took into account the defendant's drug history and fashioned a sentence that was within the guidelines and within the reasonable universe of sentences. We would ask the court to find that the statute of limitations argument was waived and that the sentence was reasonable and affirm on that basis. Thank you. Thank you. Thank you, judges. That concludes argument in this case.